NS:KDE
F.#2018R00551

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       - against -

AKRAM SHARIPOV,
ZARIF FAYZIEV and
DAVLAT GULOMOV,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(18 U.S.C. § 894)

19-MJ-395

EASTERN DISTRICT OF NEW YORK, SS:

        LUKE B. HARDISON, being duly sworn, deposes and states that he is a

Special Agent with the Federal Bureau of Investigation, duly appointed according to law and

acting as such.

        On or about and between April 21, 2019 and April 24, 2019, both days being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants AKRAM SHARIPOV, ZARIF FAYZIEV and DAVLAT GULOMOV, together

with others, did knowingly and intentionally participate in the use of extortionate means to

collect and attempt to collect one or more extensions of credit from an individual described

below as CS-1, and to punish CS-1 for the nonrepayment thereof.

        (Title 18, United States Code, Section 894)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent for approximately seven years and have been involved in investigations relating to, among other things, extortion and kidnapping offenses.   I am familiar with the facts and circumstances set forth below from, among other things, my participation in the investigation, my own observations and discussions with other law enforcement officers.

2.      According to a confidential source ("CS-1"[2]) in approximately October 2018, numerous different individuals (the "Customers"), hired CS-1, together with others, to transport money from the United States to another country.   Specifically, CS-1 collected in excess of $400,000 from the Customers in the United States and used the money to purchase various retail goods as a means for transporting the money overseas.   CS-1 then provided the goods to another individual ("Individual-1") for Individual-1 to deliver in the other country.   Individual-1, however, never did so and, according to CS-1, many of the

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.   In addition, where specific statements are described, they are set forth in part and in sum and substance.

[2]      CS-1 has no documented criminal history but has been involved in, among other things, the unlawful operation of a money transmitting business.   CS-1 has been cooperating with law enforcement since approximately February 2019 in the hope of return of property that had been seized by law enforcement as part of the unlawful money transmitting business; law enforcement has returned the seized property to CS-1.   In addition, CS-1 is cooperating in the hopes of leniency in any potential criminal prosecutions against him.

Customers held CS-1 liable for not delivering the money to the other country and began to demand that CS-1 repay them.

      3.     For instance, beginning on or about April 21, 2019, CS-1 received a series of threatening text messages/voicemails from AKRAM SHARIPOV.  According to CS-1, in these messages, SHARIPOV demanded that CS-1 pay money and threatened to physically harm CS-1.[3]  In addition, on April 23, 2019, SHARIPOV and ZARIF FAYZIEV showed up to CS-1's residence unannounced and, in sum and substance, threatened to physically harm CS-1 if he did not pay approximately $18,000 by April 24, 2019, in partial satisfaction of the debt owed as a result of the money Individual-1 stole.  According to CS-1, SHARIPOV and FAYZIEV are both trained in martial arts.

      4.     On April 24, 2019, CS-1 planned to meet with two other of the Customers (not AKRAM SHARIPOV or ZARIF FAYZIEV) and pay them approximately $5,000 in partial satisfaction of the debt owed to them as the result of Individual-1's theft. In advance of this meeting, law enforcement agents provided CS-1 with a recording device so that CS-1 could consensually record the meeting.  In addition, I, together with other law enforcement agents, conducted physical surveillance of CS-1.

      5.     At approximately 5:42 p.m., CS-1 drove his car (the "CS-1 Vehicle") and began to turn into the parking garage located next to the apartment building where CS-1 lives in Brooklyn, New York.   As the CS-1 Vehicle was crossing over the sidewalk into the

---

[3]     CS-1 has provided law enforcement with a copy of these messages. The messages are in a foreign language and the FBI is in the process of having them translated. In addition, after SHARIPOV's arrest, I instructed CS-1 to call the telephone number that had sent CS-1 these messages and the cellular telephone seized from SHARIPOV incident to his arrest began to ring.

garage, AKRAM SHARIPOV, ZARIF FAYZIEV and DAVLAT GULOMOV together got out of a car and approached the CS-1 Vehicle.  CS-1 got out of the CS-1 Vehicle, which was still parked on the sidewalk at the entrance of the parking garage, and began to talk with variously SHARIPOV, FAYZIEV and GULOMOV.  After some time, two vehicles (a black Infiniti Sport Utility Vehicle ("Vehicle-1") and a black Nissan sedan ("Vehicle-2")[4]) were parked behind CS-1 Vehicle, preventing it from leaving the entrance to the garage.

6.      During the conversation, which CS-1 consensually recorded at law enforcement agents' direction, AKRAM SHARIPOV, ZARIF FAYZIEV and DAVLAT GULOMOV variously stood around CS-1; GULOMOV at times walked away from the from the group.  Among other things, SHARIPOV began threatening to physically harm CS-1 if he did not pay the $18,000 demanded of him.  For instance, during the conversation, among other things, SHARIPOV demanded that CS-1 pay the $18,000 to SHARIPOV's father who lives in Uzbekistan.  When CS-1 stated that he could not do so, SHARIPOV stated, in sum, substance and in part, that he did not care and that he would kill CS-1.

7.      According to CS-1, AKRAM SHARIPOV thereafter grabbed CS-1 by the arm and forced him inside Vehicle-1.[5]  ZARIF FAYZIEV also got inside Vehicle-1 and DAVLAT GULOMOV stood outside nearby.  While inside Vehicle-1, SHARIPOV threatened, in sum and substance and in part, to drive CS-1 away and kill him.

---

[4]      According to CS-1, Vehicle-2 was the same car SHARIPOV and FAYZIEV had arrived in on April 23, 2019, when they threatened CS-1.

[5]      Given the positioning of the various vehicles, a law enforcement officer observed SHARIPOV pull CS-1 toward Vehicle-1.  Thereafter, another law enforcement officer observed CS-1 inside Vehicle-1.

8.      After a few minutes, a marked New York City Police Department ("NYPD") vehicle approached and an officer began to write a ticket because the CS-1 Vehicle was still parked on the sidewalk at the entrance to the parking garage.   At this time, CS-1, who was still inside Vehicle-1, stated that he wanted to speak with the NYPD officer. AKRAM SHARIPOV let him do so but told CS-1, in sum, substance and in part, that if CS-1 said anything to the police, SHARIPOV would take CS-1 away in front of the police.   In addition, SHARIPOV took CS-1's cellular telephone and also got out of the Vehicle-1 and stood near CS-1.

9.      After the NYPD officer wrote CS-1 a ticket, CS-1 got back into the CS-1 Vehicle, drove it into the parking garage, parked it and walked back outside to where CS-1 and the three defendants had been speaking previously.   AKRAM SHARIPOV and ZARIF FAYZIEV walked toward CS-1 and began speaking with CS-1 again.   Thereafter, Vehicle-2, being driven by DAVLAT GULOMOV, quickly drove up to where CS-1, SHARIPOV and FAYZIEV were standing.   As Vehicle-2 approached, SHARIPOV told CS-1 that CS-1 must get inside and they were going to go somewhere but CS-1 said he did not want to get in the car.   According to CS-1, SHARIPOV forced CS-1 inside the backseat of Vehicle-2 and got into the driver's seat.

10.      Given the danger to CS-1, I, along with other law enforcement agents, decided to intervene and approached Vehicle-2, removed all of the occupants, placed AKRAM SHARIPOV, ZARIF FAYZIEV and DAVLAT GULOMOV, along with CS-1, into custody and transported them to a local NYPD precinct.   According to CS-1, while in the holding cell at the precinct, SHARIPOV and GULOMOV both threatened, in sum and

substance and in part, CS-1 not to cooperate with law enforcement and told CS-1 that, if he were to do so, they would get out of jail and kill CS-1.

WHEREFORE, your deponent respectfully requests that the defendants AKRAM SHARIPOV, ZARIF FAYZIEV and DAVLAT GULOMOV be dealt with according to law.

_____
LUKE B. HARDISON
Special Agent, Federal Bureau of Investigation

Sworn to before me this
25th day of April, 2019

_____
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK